|  |  |
|---|---|
| JAMES ANTHONY WILLIAMS,<br><br>                Plaintiff,<br>   v.<br><br>STEVEN SINCLAIR, et al.,<br><br>                Defendants. | CASE NO. 19-5183 RJB-TLF<br><br>ORDER REVOKING IFP STATUS, DENYING MOTION FOR RECONSIDERATION AND DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THIS MATTER comes before the Court on the Plaintiff's Motion to file a Proposed Amended Lawsuit, which should be construed as a motion for leave to file a proposed amended complaint (Dkt. 31) and Objection to Court Dismissing Complaint, which should be construed as a motion for reconsideration (Dkt. 33). The Court has considered the pleadings filed regarding the motions and the remaining file.

This civil rights action was brought by Plaintiff, *pro se.* Dkt. 1. He was granted *in forma pauperis* ("IFP") status on April 8, 2019. Dkt. 4. This case was dismissed without prejudice on Plaintiff's motion for voluntary dismissal on February 18, 2020. Dkt. 30. The Plaintiff now

moves for reconsideration of the order dismissing the case and for leave to amend his complaint. For the reasons provided, the Plaintiff's IFP status should be revoked, and the motions should be denied.

## I.    FACTS

On January 30, 2020, a Report and Recommendation was filed in this case. Dkt. 29. The facts are in the Report and Recommendation, and are repeated here, for ease of reference:

> Plaintiff filed his civil rights complaint on March 8, 2019. Dkt. 5. Plaintiff is a state prisoner who, at the time he filed his complaint, was housed at Washington State Penitentiary (WSP). His complaint alleges that he is suffering from "SHU Syndrome," a condition in which a person's preexisting mental illness, such as schizophrenia, is aggravated by the isolation and lack of stimulation while housed in solitary confinement. *See* Dkt. 5, pp. 21-65. He lists a number of mental illnesses and symptoms from those mental illnesses he is currently suffering from, *id.* at 61, and alleges the conditions of solitary confinement have caused him to harm himself, that he has been subjected to physical abuse by prison staff, and that his mental health symptoms—caused or exacerbated by the conditions of solitary confinement itself— do not allow him to complete the requirements to return to general population, forcing him to remain in isolation indefinitely, *id.* at 59. Plaintiff alleges that prison staff have interfered with his attempts to file and prosecute lawsuits, have attempted to coerce him not to do so, and have retaliated against him when he has succeeded. *See id.* at 18, 51, 77. And he alleges that he has been exposed to harmful chemicals that were used to clean his cell. *See id.* at 129-30.
>
> Plaintiff alleges 13 "counts." He bases several of claims on three policies—the "Facility Plan," "Behavior Programming Plan," and "Intensive Management Status Policy"—that he alleges violate his rights under the First, Eighth, and Fourteenth Amendments. He alleges that several specific infractions he received were retaliatory and coercive. He also alleges medical negligence, medical malpractice, and assault. He names over 60 individual defendants. These appear to be corrections staff, administrators, and medical staff from Washington State Penitentiary, Monroe Correctional Complex, the Washington Department of Corrections (DOC) headquarters in Olympia, and possibly other facilities. *See generally* Dkt. 5, pp. 140-76.
>
> On May 30, 2019, defendants filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 10. In that motion defendants seek dismissal of the complaint based on plaintiff's failure to allege the personal participation of numerous defendants, failure to provide any facts to state a claim for medical negligence, failure to provide any nexus to support a viable retaliation claim, and on the basis that all defendants are entitled to qualified immunity. *Id.* Plaintiff sought and was granted several extensions of time to respond to defendants' motion to dismiss. *See* Dkts. 13, 19, 23. The most recent extension of time allowed plaintiff until January 20, 2020, to file a response to defendants' motion. Dkt. 23. On

ORDER REVOKING IFP STATUS, DENYING MOTION FOR RECONSIDERATION AND DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT - 2

> December 13, 2019, plaintiff filed a motion to "Request Court to Order Defendants' Attorney to Give Plaintiff a Copy of Complaint and Exhibits." Dkt. 24. On December 20, 2020, defendants filed a response to the motion indicating that they had provided plaintiff with a copy of his complaint, including exhibits, totally 423 pages. Dkt. 25. The undersigned has directed, by separate order, that this motion be stricken as moot. Dkt. 28.
> 
> On January 23, 2020, plaintiff filed the instant motion to voluntarily dismiss his case without prejudice based, it appears, at least in part on his belief that his complaint did not ask for damages and that his requests for injunctive relief would be rendered moot in light of his recent transfer to a new facility. Dkt. 26. But the Court notes that the final page of plaintiff's complaint includes a request for injunctive relief and damages. Dkt. 5, at 423. Plaintiff's motion also indicates that instead of pursuing this action he intends to file four different actions in state court based on the same allegations raised in the instant complaint. Dkt. 26.

Dkt. 29, at 2-4. The Report and Recommendation recommended that the Court grant the Plaintiff's motion to dismiss the case and strike the Defendants' motion to dismiss as moot. *Id.* The Report and Recommendation further provided that "[i]f the Plaintiff wishes to proceed with this matter in light of the fact that his complaint includes a request for damages, he should indicate as such in objection to this Report and Recommendation." *Id.,* at 5. It recommended that "if the Court declines to dismiss the action, . . . the Plaintiff be required to file a response to defendants' motion to dismiss (Dkt. 10) within ten (10) days of the Court's order ruling on this Report and Recommendation and that plaintiff be permitted no further extensions of time to file his response." *Id.* Objections, if any, to the Report and Recommendation were due by February 13, 2020 and the Report and Recommendation was noted for consideration on February 14, 2020. *Id.*

The Plaintiff did not timely respond. On February 18, 2020, the Report and Recommendation was adopted and the case dismissed without prejudice. Dkt. 30.

The Plaintiff has been repeatedly warned (on June 10, 2019, July 23, 2019, October 16, 2019, October 22, 2019, and December 17, 2019) that his decision to mail pleadings to the Court violates Western District of Washington General Order 06-16, which requires prisoners held at

ORDER REVOKING IFP STATUS, DENYING MOTION FOR RECONSIDERATION AND DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT - 3

Monroe Correctional Complex. He was repeatedly directed to comply with the order. He has ignored the Court's directives.

On February 19, 2020, via the U.S. Post Office, the Court received Plaintiff's motion for leave to amend the complaint, and a 327-page proposed amended complaint and over 430 pages of attachments. Dkt. 31. (He sent the Court this motion and attachments in several envelopes; postage was dated Feb. 18, 2020 (Dkts. 31-2; 31-4; 31-6; 31-8)). In this motion, the Plaintiff notes that the Defendants' May 30, 2019 motion had merit. Dkt. 31, at 2. He "asks the Court to grant this motion to amend as a substitute for the response [he] would have made" to the motion to dismiss. *Id.*

On February 26, 2020, the Plaintiff filed a pleading entitled "Objection to Court Dismissing Complaint" which should be construed here as a motion for reconsideration. Dkt. 33. In this motion, he asserts that he filed his motion for leave to amend the complaint on February 3, 2020, before the February 14, 2020 deadline. *Id.* He asks the Court to grant his motion to amend or to "file [his] proposed amended lawsuit as a new lawsuit and give it a new case number." *Id.*, at 2.

The proposed amended complaint is hand-written, difficult to read, and extraordinarily repetitive. In the proposed amended complaint, the Plaintiff asserts that over the course of several years he repeatedly "wet himself" and self-mutilated due to being kept in solitary confinement. *See e.g.* Dkts. 31-1, at 7-13; 31-3, at 52-56; 58-59; 135-136; and 138-139. He alleges that he was assaulted several times by various staff members, in part, as retaliation for filing lawsuits over several years and institutions. Dkt. 31-1, at 7-13; Dkt. 31-3, at 5-51; 56-58; 117; and 124-132. The Plaintiff maintains he was denied access to his legal papers, law books, and "legal phone calls." Dkt. 31-1, at 7-13. He alleges that "Joni Aiyeku wrote [him] a 501 for

1 killing her." Dkt. 31-1, at 7. The Plaintiff asserts that years' worth of his grievances were not processed and assaults on him were not investigated. *See e.g. Id.*, at 10. The Plaintiff alleges that he is forced to live in a "feces infested" cell. *Id.*, at 12. He maintains that he is forced to endure "greater deprivations" and "abuses" than other mentally ill prisoners. *Id.*, at 13-15. The Plaintiff asserts that his being in solitary confinement for 11 years (in some areas of the proposed amended complaint 12 years, in others 23 years Dkt. 31-3, at 60) (with the substantially reduced time out of his cell), limited exercise time, 2,000 calorie diet, no t.v. or radio and little contact with others has resulted in his development of SHU, which worsens his behavior, and means he will stay in solitary confinement. *See e.g. Id.*, at 15-75; Dkt. 31-3, at 60-109, 112-115, and 118-120.

He alleges that for years, the staff has denied him medical and dental care and he has declined medical and dental care because of his SHU. Dkt. 31-1, at 75. As a result of his SHU, the Plaintiff contends that he refuses to bathe, change clothes, brush his teeth, or "wipe [his] ass." *Id.*, at 76. He asserts that SHU makes him self-mutilate, "wet" himself, throw feces at the guards, eat feces, and smear it all over his cell. *Id.* All of which, he maintains, result in more infractions and more solitary confinement. *Id.*

The Plaintiff's proposed amended complaint discusses events related to his receiving anti-psychotic medication around 2004 or 2005. Dkt. 31-1, at 84-93. He repeats several of his assertions relating to solitary confinement and the prison grievance system. Dkt. 31-1, at 98-151. The Plaintiff alleges that, even though he only called a prison official "Jap," he was sanctioned, in part, by "60 days no food . . . 60 days no sunshine." *Id.*, at 125-126. He asserts that he was left outside "buck naked" for several hours on more than one occasion. Dkt. 31-3, at 3-4. The Plaintiff asserts that the Department of Corrections policies on solitary confinement harms

mentally ill prisoners. Dkt. 31-1, at 141-146. He asserts multiple constitutional claims, including under fourteenth and eighth amendments, and seeks damages and injunctive relief. Dkts. 31-1 and 31-3.

This is one of many cases the Plaintiff has filed asserting similar claims. *See e.g. Williams v. Sinclair, et. al.*, Western District of Washington case number 19-cv-1583-RSM-BST (asserting eighth amendment claims related to solitary confinement, Plaintiff's alleged SHU, his tendency to spread his own fecal matter, and staff assaults); *Williams v. Sinclair, et. al.,* Western District of Washington case number 19-cv-1868-JCC-MAT (asserting eighth amendment claims for alleged beatings by prison staff and issues related to solitary confinement and his alleged SHU). A recently adopted Report and Recommendation, that recommended his *in forma pauperis* application be denied, provided,

> On April 5, 2019, the Honorable Michelle L. Peterson entered a Report and Recommendation finding Plaintiff had incurred three strikes and recommending Plaintiff's application to proceed IFP be denied. *See Williams v. Sinclair*, Case No. 2:19-cv-345-JCC (W.D. Wash., April 5, 2019). Concurring with Judge Peterson, the undersigned finds the following cases, which were filed while Plaintiff was incarcerated and dismissed for failure to state a claim prior to Plaintiff initiating this lawsuit, constitute strikes: *Williams v. Portine*, Case No. 2:11-cv-1214-JCC (W.D. Wash.); *Williams v. Neely*, Case. No. 2:15-cv-489-BJR (W.D. Wash.); and *Williams v. Collins*, Case No. 2:15-cv-735-MJP (W.D. Wash.). The Court also finds Plaintiff initiated at least three cases while incarcerated that were dismissed for failure to obey a court order after Plaintiff failed to amend deficient complaints and was warned that the failure to do so could result in dismissal of the complaints under § 1915. *See Williams v. Warner*, Case No. 3:17-cv-5615-BHS (W.D. Wash.); *Williams v. Gage*, Case No. 3:17-cv-6076-RBL (W.D. Wash.); *Williams v. Cogburn*, Case No. 3:17-cv-6077-BHS (W.D. Wash.). As the Court placed Plaintiff on notice that he had failed to state a claim, these dismissals also arguably count as strikes under Ninth Circuit precedent. *See Harris v. Mangum*, 863 F.3d 1133, 1142-43 (9th Cir. 2017).

*Williams v. Sinclair, et. al.*, Western District of Washington case number 19-cv-5185 RBL–DWC; Dkt. 4. In light of these findings, this Court should review the Plaintiff's IFP status in addition to ruling on the motions.

## II. DISCUSSION

### A. IFP STATUS

Under the Prison Litigation Reform Act, 28 U.S.C. § 1915(a), a district court may waive the filing fee for civil complaints by granting IFP status to individuals unable to afford the fee. *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Indigent prisoners receive IFP status if they meet the requirements, but § 1915(b) states prisoners proceeding IFP must pay the filing fee when funds become available in their prison accounts. 28 U.S.C. §1915(b); *Cervantes*, 493 F.3d at 1051. "Additionally, prisoners who have repeatedly brought unsuccessful suits may entirely be barred from IFP status under the three-strikes rule." *Cervantes*, 493 F.3d at 1051-52. The "three-strikes rule," contained in §1915(g), states:

> [i]n no event shall a prisoner bring a civil action under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

As above, the Plaintiff has incurred more than three strikes under the PLRA. He must show that he is in "imminent danger of serious physical injury" to proceed IFP. The Plaintiff has failed to make such a showing in the original complaint or in his proposed amended complaint. The imminent danger exception requires a prisoner allege a danger which is "ready to take place" or "hanging threateningly over one's head." *Cervantes*, 493 F.3d at 1056. The Plaintiff fails to make a credible showing that he is in imminent danger of serious physical injury. His allegations relate to his alleged treatment over the span of several years. His claims of imminent danger are speculative at best and do not meet the requirements of §1915(g). The Plaintiff's IFP status should be revoked.

**B. MOTION FOR RECONSIDERATION**

Local Rule W.D. Wash. 7(h) provides that, "[m]otions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."

The motion for reconsideration (Dkt. 33) should be denied. It has failed to point to a manifest error in the February 18, 2020 Order (Dkt. 30). The Plaintiff fails to make a "showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." The Plaintiff's assertions that the mailroom held on to his mail for over two weeks is not credible. His motion should be denied. The Court's prior order dismissing the case without prejudice should be affirmed. To the extent that the Plaintiff's motion for reconsideration is a reiteration of his motion for leave to file an amended complaint or a motion to open a new case, that portion of the motion should be addressed below.

**C. LEAVE TO FILE AMENDED COMPLAINT**

The Plaintiff's motion for leave to file an amended complaint (Dkt. 31) or assign the proposed amended complaint a new case number should be denied. This case has been dismissed; there is nothing to amend. If the Plaintiff wishes to file a new case, he is free to do so.

### III. ORDER

It is **ORDERED** that,

- The Plaintiff's IFP status **IS REVOKED**;

- The Plaintiff's motion for reconsideration (Dkt. 31) **IS DENIED**;

- The Plaintiff's for leave to file a proposed amended complaint (Dkt. 31) **IS DENIED**; and

- This case **IS CLOSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 12th day of March, 2020.

*Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge